UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RALPH A. BAWCOM, JR., <br><br> Plaintiff, <br><br> v. <br><br> DUSTY ROADES et al., <br><br> Defendants. | Case No. 3:22-cv-00923 <br><br> Judge Eli J. Richardson <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

This action brought under 42 U.S.C. § 1983 arises out of pro se and *in forma pauperis* Plaintiff Ralph A. Bawcom, Jr.'s incarceration in the Williamson County Jail in Franklin, Tennessee. (Doc. Nos. 1, 22, 23.) Bawcom alleges that Defendants Dr. Kenneth Mathews and Lieutenant Chad Youker denied him adequate medical care for a hernia in violation of his constitutional rights. (*Id.*) Before the Court are Mathews's and Youker's motions for summary judgment. (Doc. Nos. 24, 34.) Considering the record evidence and the parties' arguments, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant both motions.

### I. Background

#### A. Factual Background

The Williamson County Jail contracts with Southern Health Partners (SHP) to provide medical services to people who are incarcerated in its facility. (Doc. Nos. 37-1, 42.) Bawcom's jail medical records show that, on June 30, 2021, Bawcom completed and signed an SHP "new intake" "admission medical data form" indicating that he had hepatitis C, liver cysts, and kidney cysts, among other medical conditions. (Doc. No. 40-1, PageID# 229.) Bawcom's records also

show that Mathews, an SHP medical director and provider, signed an "admission data [and] history and physical form" for Bawcom stating that Bawcom's chronic medical conditions include hepatitis C and high blood pressure. (*Id.* at PageID# 237, 241.)

On October 27, 2022, an SHP nurse saw Bawcom in the jail medical office after Bawcom "complain[ed] of a possible umbilical hernia." (Doc. No. 37-1, PageID# 160, ¶ 4; *see also* Doc. No. 40-1.) Bawcom told the nurse that he had been experiencing abdominal pain for several days. (Doc. Nos. 37-1, 40-1, 42.) Mathews ordered blood tests and an abdominal ultrasound. (*Id.*) The blood tests showed that "Bawcom's fasting glucose level was slightly out of range . . . [,]" but "[a]ll other blood values tested were within reference range[.]" (Doc. No. 37-1, PageID# 161, ¶ 6 (citation omitted).) Dr. Marc Awobuluyi performed an abdominal ultrasound on Bawcom on October 31, 2022. (Doc. Nos. 37-1, 40, 42.) "Awobuluyi reported that there was a periumbilical hernia measuring at least 3.3 x 2.8 cm, approximately 3.0 mm in the skin surface with an aperture of 1.8 cm." (Doc. No. 37-1, PageID# 162, ¶ 7 (citation omitted); *see also* Doc. Nos. 40-1, 42.) "An umbilical hernia is a defect in the abdominal wall or muscles near the navel, through which a bulge or sac containing fat or intestine may protrude." (Doc. No. 37-1, PageID# 162, ¶ 9 (citation omitted); *see also* Doc. No. 42.) Mathews states that "Bawcom's hernia is reducible[,] [ ]meaning that it can be gently pushed back through the abdominal wall[.]" (Doc. No. 37-1, PageID# 163, ¶ 11.)

Mathews saw Bawcom in the jail medical office on November 3, 2022. (Doc. Nos. 37-1, 40-1, 42.) To treat Bawcom's hernia and abdominal pain, "Mathews prescribed stool softener daily with Tylenol 650 mg as needed, with a maximum dose of 2 per week." (Doc. No. 37-1, PageID# 162, ¶ 8; *see also* Doc. Nos. 40-1, 42.) Mathews states that he "educated" Bawcom "on the importance of using stool softener to prevent straining as well as the signs and symptoms of

the hernia becoming strangulated, which could be an emergent situation and [ ] Bawcom would need to contact medical immediately." (Doc. No. 37-1, PageID# 162, ¶ 8; *see also* Doc. Nos. 40-1, 42.) Mathews asserts that "Bawcom indicated that he understood these instructions." (Doc. No. 37-1, PageID# 162, ¶ 8 (citation omitted); *see also* Doc. Nos. 40-1, 42.)

Bawcom filed two grievances on the day of his appointment with Mathews stating that he "was told by the doctor that the jail[ ]didn't have enough money to fix" his hernia and asking for assistance. (Doc. No. 27, PageID# 128; Doc. No. 50-1, PageID# 290.) It appears that the second grievance was "[r]esolved [u]nsubstantiated" with a note that "Sheriff Rhoades does not receive correspondence via the kiosk." (*Id.*) Bawcom filed an appeal the next day stating again that he "was told by the doctor that the jail didn't have the money to fi[x] [his] hernia[.]" (*Id.*) Youker received the appeal and states that he "consulted with the medical staff[,] who explained that surgery was not necessary or recommended and that [ ] Bawcom was being treated by nonsurgical means as directed by the contracted physician working in the Jail." (Doc. No. 26, PageID# 122, ¶ 4.) Youker responded to Bawcom's grievance appeal, stating: "I have spoke[n] with medical. This is not a life sustaining issue, so the jail is not going to pay to have it fixed." (Doc. No. 27, PageID# 128; Doc. No. 50-1, PageID# 290.)

Bawcom filed a second appeal two weeks after filing his first, stating:

> [T]hat is not what was said. [N]o one said anything about before I came to jail, I've been here for 17 months, I said I noticed it about 5 months ago, it stared hurting[ ] bad 3 months ago. [S]o all of that you said is very[ ]wrong[.]

(Doc. No. 27, PageID# 129.) Youker responded: "Sir, I am unable to respond to your appeal. Appeals to grievances come directly to me and not medical. Please submit another request or grievance to medical. Thanks." (*Id.*)

Mathews states that Bawcom's "hernia will continue to be monitored by the Jail medical staff." (Doc. No. 37-1, PageID# 163, ¶ 11 (citation omitted).)

B.    **Procedural History**

1.    **Bawcom's Pleadings**

Bawcom initiated this action on November 7, 2022, by filing a form complaint for civil rights violations under 42 U.S.C. § 1983 against Mathews, Youker, and Williamson County Sheriff Dusty Rhoades, alleging that the defendants violated his Eighth Amendment right to adequate medical care while incarcerated by refusing to surgically correct his hernia.[1] (Doc. No. 1.) Bawcom's complaint seeks $100,000.00 in monetary damages from each defendant and a Court order requiring the defendants to provide the hernia surgery. (*Id.*)

The Court granted Bawcom's application for leave to proceed *in forma pauperis* and screened his complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e. (Doc. No. 7.) The Court found that Bawcom had stated colorable Eighth Amendment deliberate indifference claims against Mathews and Youker in their individual and official capacities, but dismissed Bawcom's claims against Rhoades for failure to state claims on which relief can be granted and dismissed Rhoades as a defendant. (*Id.*)

Bawcom then filed two documents titled "Amendment of Complaint" seeking additional monetary damages against Mathews and Youker (Doc. No. 22, PageID# 96; Doc. No. 23, PageID# 102); alleging that Mathews continues to give Bawcom Tylenol for his hernia pain, even

---

[1] Under the standard governing filings by pro se incarcerated litigants—known as the "prison mailbox rule"—"a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). The rationale for this rule is that "pro se prisoners have no control over delays between the prison authorities' receipt of [a pleading] and its filing, and their lack of freedom bars them from delivering the [pleading] to the court clerk personally." *Houston v. Lack*, 487 U.S. 266, 273–74 (1988). Courts assume, "absent contrary evidence," that an incarcerated person delivered a legal filing to prison authorities "on the date he or she signed [it]." *Brand*, 526 F.3d at 925. Bawcom signed his complaint on November 7, 2022. (Doc. No. 1.) All references herein to Bawcom's filings will reflect the Court's application of the prison mailbox rule.

though Mathews knows that Bawcom has hepatitis C and that Tylenol is damaging to his liver (Doc. Nos. 22, 23); and asserting that Youker is liable for violating Bawcom's constitutional rights because he "agreed with [ ] Mat[]hews['s] treatment measures" (Doc. No. 23, PageID# 103, ¶ 5). The Court considers the allegations contained in these filings as part of Bawcom's complaint.[2]

### 2. Mathews's and Youker's Summary Judgment Motions

Mathews filed a motion for summary judgment (Doc. No. 34) supported by a memorandum of law (Doc. No. 36), a statement of undisputed material facts (Doc. No. 37-1), Mathews's sworn

---

[2]     Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within" "21 days after service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1). Youker and Mathews certified that they served their answers on Bawcom by mail on March 9, 2023, and March 14, 2023, respectively. (Doc. Nos. 13, 16.) Rule 6(d) provides that, "[w]hen a party may or must act within a specified time after being served and service is made" by mail, "3 days are added after the period would otherwise expire . . . ." Fed. R. Civ. P. 6(d). Bawcom signed his amended complaints on March 30, 2023. (Doc. Nos. 22, 23.) Applying the prison mailbox rule and Rule 6(d), Bawcom therefore filed his amended pleadings within the time allowed under Rule 15(a)(1) for amendments as a matter of course.

An amended pleading typically "supersedes the pleading it modifies" such that "the original pleading no longer performs any function in the case . . . ." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. supp. July 2023). However, in light of the leniency afforded to pro se litigants at the pleading stage, courts have the discretion to construe amended pleadings in conjunction with past pleadings in some circumstances. *See Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-cv-00612, 2017 WL 1164583, at *1 (M.D. Tenn. Mar. 28, 2017) (construing pro se plaintiff's complaints together where plaintiff "likely did not understand that her Amended Complaint would supersede the original Complaint, and that therefore she needed to re-allege the facts entitling her [to] relief"); *Bailey v. Deutsche Bank Nat'l Tr. Co.*, No. 1:18-cv-0754, 2018 WL 6164337, at *1 (N.D. Ga. Oct. 29, 2018) (construing pro se plaintiffs' "second amended complaint in conjunction with the facts alleged in their original complaint" "in keeping with the liberal construction of *pro se* pleadings"); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Bawcom's amended complaints allude to the same core factual allegations material to his legal claims, but omit certain details included in his original complaint. The Court will therefore liberally construe Bawcom's amended complaints with his original complaint where his original allegations are necessary to understand the amended pleadings. *See White v. DeMarco*, Civ. Action No. 17-1623, 2018 WL 1696563, at *2 (D. Md. Apr. 6, 2018) (construing plaintiff's amended pleading to incorporate the original pleading where amended complaint "include[d] allegations that overlap[ped] with the initial Complaint, but [was] organized in a different way and omit[ted] certain parts").

declaration (Doc. No. 37-2), and excerpts of Bawcom's jail medical records (Doc. No. 40-1). Mathews argues that he is entitled to summary judgment on Bawcom's Eighth Amendment claims because "[t]he undisputed evidence shows that[,] in [ ] Mathews'[s] professional medical opinion, nonsurgical treatment is appropriate for [Bawcom's] hernia at this time, and all of his medical treatment has been prompt, appropriate and within the standard of care." (Doc. No. 36, PageID# 153.) In response, Bawcom filed a document titled "Answer to Summary Judgement [sic]" responding to Mathews's asserted undisputed material facts and arguing that Mathews's medical opinion is "in question" because the record shows that Mathews prescribed Bawcom Tylenol and Ibuprofen despite knowing that these medications were harmful to Bawcom's liver disease and high blood pressure. (Doc. No. 42, PageID# 250, 251, ¶ 10.) Mathews did not file an optional reply in support of his summary judgment motion.

Youker filed a separate motion for summary judgment (Doc. No. 24) supported by a memorandum of law (Doc. No. 25), a statement of undisputed material facts (Doc. No. 26), Youker's sworn affidavit (Doc. No. 27), and a copy of Mathews's declaration (Doc. No. 28). Youker argues that he is entitled to summary judgment because Bawcom cannot show a violation of his Eighth Amendment rights and because Youker was not personally involved in making decisions about Bawcom's healthcare. (Doc. No. 25.) In the alternative, Youker argues that he is entitled to qualified immunity from Bawcom's claims. (*Id.*) In response, Bawcom filed a document titled "Answer to Summary Judgement [sic]" that responds to Youker's asserted undisputed material facts and argues that Youker is "as much [at] fault as" Mathews because Youker agreed with Mathews's treatment plan for Bawcom's hernia even though Youker "should have been able to tell that" Bawcom needed surgery. (Doc. No. 41, PageID# 242, 244, ¶¶ 1, 4.) Bawcom further argues that he "filed a [m]otion to request [p]roduction of documents" including grievances and

medical records that would support his claims, but that he "heard nothing back." (*Id.* at PageID# 244–45, ¶¶ 5, 6.) Youker filed a reply reiterating his summary judgment arguments and stating that Bawcom had not served him with discovery requests or filed a discovery motion. (Doc. No. 43.)

### 3. Production of Medical Records and Bawcom's Supplemental Summary Judgment Response

Approximately two months later, Bawcom filed a letter addressed to the Court stating that he had asked Mathews and Youker to produce certain documents from his medical records and that "Youker[']s [l]awyers sent the documents [Bawcom] ask[ed] for" but "Mathews and his [l]awyers ha[d] not provided the documents . . . ." (Doc. No. 46, PageID# 269.) Bawcom asked the Court for assistance obtaining the requested medical records from Mathews because the documents "could be critical evidence in this case." (*Id.* at PageID# 270.)

Mathews filed a notice two days later stating that he had mailed Bawcom "a copy of [his] medical chart[,]" but that, "[u]pon receipt of [Bawcom's] letter, . . . [Mathews's] [c]ounsel reviewed the documents that had been mailed to [Bawcom] . . . [and] determined that some of the pages of [Bawcom's] medical chart had been inadvertently omitted from the mailed documents." (Doc. No. 47, PageID# 275, 276, ¶¶ 2, 4.) Mathews stated that he had "re-mailed [ ] [Bawcom] a complete copy of his medical chart" and that he was "not opposed if [Bawcom] requests to supplement his [response in opposition to Mathew's motion for summary judgment] with these documents." (*Id.* at PageID# 276, ¶¶ 5, 6.)

The Court afforded Bawcom an opportunity to supplement his responses in opposition to Mathews's and Youker's summary judgment motions based on the newly produced medical records and ordered Bawcom to file any supplemental responses by October 20, 2023. (Doc. No. 49.)

7

Bawcom filed a supplemental response on October 9, 2023, and attached excerpts from his medical records and jail grievance records. (Doc. Nos. 50, 50-1.) Bawcom argues that the evidence shows that "Mathews stated [T]ylenol was bad for [Bawcom's] liver because [he] ha[s] hep[atitis] C" and Mathews's "medical opinion should be in question about [Bawcom's] need to have surgery to stop the pain instead of treating it with [T]ylenol which can cause further damage to [his] liver." (Doc. No. 50-1, PageID# 284.)

## II. Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

## III.     Analysis

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Bawcom alleges that Mathews and Youker were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

Mathews and Youker do not dispute that they are state actors for purposes of liability under § 1983, and the Court finds that each defendant acted under color of state law within the meaning

of the statute. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 55–56 (1988) (holding that physicians employed by the state to provide prison medical care are state actors for purposes of § 1983 regardless of whether they are state employees or contractors); *Lee v. Smithson*, No. 3:18-cv-01203, 2018 WL 6832094, at *2 (M.D. Tenn. Dec. 28, 2018) (finding that, "[i]n carrying out his duties as an employee of the Williamson County Jail, [c]orporal [defendant] was a 'state actor' under Section 1983"). The only question at summary judgment, therefore, is whether the record shows genuine issues of material fact that Mathews and Youker deprived Bawcom of his constitutional rights.

Bawcom alleges that Mathews and Youker violated his Eighth Amendment right to adequate medical care while he was incarcerated. (Doc. Nos. 1, 22, 23.) The Eighth Amendment, which applies to state governments through the Fourteenth Amendment, "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Berkshire v. Dahl*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). A deliberate indifference claim against a prison official has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the actor had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v.*

*Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

### A. Bawcom's Individual-Capacity Claims Against Mathews

Bawcom claims that Mathews acted with deliberate indifference to his serious medical needs by refusing to order surgery for Bawcom's hernia. (Doc. Nos. 1, 22, 23.) Mathews argues that he is entitled to summary judgment on Bawcom's individual-capacity claim against him because the record shows no genuine question of fact as to whether Mathews had a sufficiently culpable mental state in refusing to order hernia surgery for Bawcom. (Doc. No. 36.) Mathews further argues that "[t]here is no evidence that the objective element has been met[.]" (*Id.* at PageID# 150.)

Mathews has presented sworn evidence that he is a licensed and board-certified physician and that, "in [his] professional medical opinion[,]" surgery for Bawcom's hernia "has not been recommended and . . . is not necessary at this time" because "Bawcom's hernia is reducible . . . and is being treated safely and appropriately with conservative medical measures." (Doc. No. 37-2, PageID# 170, ¶¶ 10, 11.) Mathews further asserts that hernia "[s]urgery would be elective at this point and" would involve "risks" to Bawcom's health, that "nonsurgical medical treatment is appropriate[,]" and that "[a]ll of [the medical treatment Bawcom has received for his hernia from SHP] has been within the standard of care." (*Id.* at PageID# 170–71, ¶¶ 10, 13.) Construing the

record evidence in the light most favorable to Bawcom, the Court finds that Mathews has carried his initial burden to show the absence of a genuine dispute of material fact that Mathews knew of and disregarded a substantial risk of serious harm to Bawcom.

The burden therefore shifts to Bawcom to show more than "[t]he mere existence of a scintilla of evidence in support of" his position. *Anderson*, 477 U.S. at 252. In his responses to Mathews's summary judgment motion, Bawcom generally disagrees with Mathews's assertion that nonsurgical treatment for his hernia was medically appropriate. (Doc. Nos. 42, 50.) He points to record evidence showing that Mathews prescribed Bawcom Tylenol and that he also received Ibuprofen and argues that this casts doubt on Mathews's professional medical judgment because Tylenol is damaging to Bawcom's liver and Ibuprofen is harmful for his blood pressure. (*Id.*)

Bawcom's medical records show that, after examining Bawcom on November 3, 2022, Mathews prescribed Tylenol to treat the pain associated with his hernia. (Doc. Nos. 40-1, 50-1.) Specifically, Mathews prescribed "Tylenol 650 mg" as needed with a "max[imum] dose" of "2 per week" because of Bawcom's "liver disease." (Doc. No. 40-1, PageID# 194; Doc. No. 50-1, PageID# 289.) Bawcom also points to record evidence showing that he received Ibuprofen in March 2023, although the records do not show who prescribed it to him. (Doc. Nos. 50, 50-1.) But Bawcom has not pointed to any record evidence, aside from his own unsworn statements, to support his argument that prescribing him any amount of Tylenol or Ibuprofen was medically inappropriate. And the medical records in evidence show that Mathews considered Bawcom's liver disease in limiting his Tylenol dosage. (Doc. No. 40-1, PageID# 194; Doc. No. 50-1, PageID# 289.) Bawcom's contrary unsupported statements are not sufficient to create a genuine dispute of material fact that Mathews knew of and disregarded a substantial risk of harm to Bawcom by recommending nonsurgical treatment to treat Bawcom's hernia. *See* Fed. R. Civ.

P. 56(c) (requiring that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

Mathews has shown no genuine issue of material fact on Bawcom's individual-capacity Eighth Amendment claim against him and his motion for summary judgment on that claim should be granted.[3]

### B. Bawcom's Individual-Capacity Claims Against Youker

Bawcom argues that Youker was deliberately indifferent to his serious medical needs because Youker agreed with Mathews's nonsurgical treatment measures for his hernia and therefore denied Bawcom's grievance appeal. (Doc. Nos. 1, 23, 41.) Youker argues that he is entitled to summary judgment because he reasonably relied on Mathews's medical opinion that surgical treatment was not necessary and because denial of an administrative grievance is not a sufficient basis for liability under § 1983. (Doc. No. 25.) Alternatively, Youker argues that the doctrine of qualified immunity shields him from Bawcom's claim. (*Id.*)

The record shows that, on November 4, 2022, Bawcom filed a grievance appeal stating: "ok, to whom it may concern[ ], I was told by the doctor that the jail didn't have the money to fi[x] my hernia[.]" (Doc. No. 27, PageID# 128; Doc. No. 50-1, PageID# 290.) Youker states by

---

[3] Because there is no genuine dispute of material fact as to the subjective prong of Bawcom's individual-capacity claim against Mathews, the Court need not address Mathews's argument that there is also no genuine issue of material fact as to the objective prong. *See, e.g.*, *McCain v. St. Clair Cnty.*, 750 F. App'x 399, 403 (6th Cir. 2018) ("Because [plaintiff's Eighth Amendment deliberate indifference] claim fails on the subjective prong, we need not address the objective one.").

affidavit that, "[a]fter receiving [ ] Bawcom's grievance appeal, [he] consulted with the medical staff who explained that surgery was not necessary or recommended and that [ ] Bawcom's hernia was being treated by nonsurgical means as directed by the contracted physician working in the Jail." (Doc. No. 27, PageID# 125, ¶ 6.) The record shows that, three days after Bawcom filed his grievance appeal, Youker marked the status of the grievance "Resolved Unsubstantiated" and sent the following note to Bawcom: "I have spoke[n] with medical. This is not a life sustaining issue, so the jail is not going to pay to have it fixed." (*Id.* at PageID# 128; Doc. No. 50-1, PageID# 290.) Two weeks later, Bawcom filed a second grievance appeal stating:

> [T]hat is not what was said. [N]o one said anything about before I came to jail, I've been here for 17 months, I said I noticed it about 5 months ago, it started hurting[ ] bad 3 months ago. [S]o all of that you said is very[ ] wrong[.]

(Doc. No. 27, PageID# 129.) Youker responded "Sir, I am unable to respond to your appeal. Appeals to grievances come directly to me and not medical. Please submit another request or grievance to medical. Thanks." (*Id.*)

Bawcom does not dispute Youker's assertion that he consulted with jail medical staff in responding to Bawcom's grievance appeal. Instead, Bawcom argues that "Youker's consultation with medical staff is moot because even being a lay person . . . , Youker should have been able to tell that [Bawcom] had a sufficient need for surgical treatment" in part because Youker received "sev[e]ral [g]rievances from [Bawcom] about being treated improperly[.]" (Doc. No. 41, PageID# 244, ¶ 4.) Bawcom further argues that, because Youker is a jail administrator and Bawcom "is under the custody and care of the jail[,] . . . Youker is responsible for [Bawcom's] well being, safety[,] and care." (*Id.*) Bawcom's arguments are insufficient to create a genuine issue of material fact at summary judgment.

There is no genuine dispute based on the record evidence that the only actions Youker took with respect to Bawcom's hernia treatment was denying Bawcom's grievance appeals. As Youker

argues, it is well established that prison officials cannot be held liable under § 1983 for denying a grievance. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *Buckner v. Vargas*, No. 3:20-cv-00562, 2020 WL 4446261, at *4 (M.D. Tenn. Aug. 3, 2020) (finding that plaintiff failed to state a claim against prison official whose "only involvement in this case [was] responding to one of Plaintiff's grievances"). Nor may courts impose § 1983 liability "'under a theory of *respondeat superior*,'" because "'proof of personal involvement is required for a supervisor to incur personal liability.'" *Grinter*, 532 F.3d at 575 (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). Even if the record showed that Youker agreed with Mathews's diagnosis and treatment plan, he could not be liable under § 1983 without his own personal involvement.

Because Youker has shown no genuine issue of material fact as to Bawcom's individual-capacity claim against him, he is entitled to summary judgment on that claim.[4]

### C. Bawcom's Official-Capacity Claims Against Mathews and Youker

Bawcom also claims that Mathews and Youker are liable in their official capacities for violating Bawcom's constitutional right to adequate medical care while incarcerated. (Doc. Nos. 1, 22, 23.) Federal courts treat official-capacity claims against an individual as municipal liability claims against the entity for which the individual is an officer or agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Supreme Court has held that a government body or private entity performing a government function "can be found liable under § 1983 . . . where the municipality

---

[4] Because there is no genuine dispute of material fact based that Youker cannot be held liable in his individual capacity under § 1983 based on this record, the Court does not need to address Youker's alternative argument that he is entitled to qualified immunity from Bawcom's individual-capacity claim.

*itself* causes the constitutional violation at issue" through execution of its own policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). The overarching question in resolving such claims is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* For purposes of municipal liability claims, "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). Here, Mathews is a proxy for SHP and Youker is a proxy for Williamson County.

Courts in this circuit engage in a two-pronged inquiry when considering municipal liability claims under § 1983. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (quoting *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004)); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505 (6th Cir. 1996) (explaining that "[a] municipal liability claim . . . must be examined by applying a two-pronged inquiry"). "We first ask whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law." *Powers*, 501 F.3d at 607 (first citing *Cash*, 388 F.3d at 542; and then citing *Alkire*, 330 F.3d at 813). Second, we ask whether the defendant entity is "responsible for that deprivation." *Cash*, 388 F.3d at 542 (citing *Doe*, 103 F.3d at 507); *cf. Powers*, 501 F.3d at 607 (asking "whether the alleged deprivation was caused by the defendants . . .").

Here, because there is no genuine dispute of material fact that Bawcom was not deprived of his asserted constitutional right, his official-capacity claims against Mathews and Youker must fail. *Cf. City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (holding that *Monell* does not "authorize[ ] the award of damages against a municipal corporation based on the actions of one of its officers when . . . [a] jury has concluded that the officer inflicted no constitutional harm"). Mathews and Youker are entitled to summary judgment on these claims as well.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Mathews's and Youker's motions for summary judgment (Doc. Nos. 24, 34) be GRANTED and that summary judgment be entered in their favor.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of November, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge